BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBERKE@KRAMERLEVIN.COM

June 5, 2017

BY ECF AND HAND DELIVERY
TO CHIEF JUDGE MCMAHON

Hon. Denise L. Cote
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Hon. Colleen McMahon
Chief United States District Judge
Assignment Committee for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:    *United States v. David Blaszczak, Theodore Huber, Robert Olan and Christopher Worrall*, No. 17 Cr. 308 (DLC)

Dear Judge Cote and Chief Judge McMahon:

        On behalf of Theodore Huber and Robert Olan, we respectfully submit this letter in reply to the government's June 2, 2017 letter ("Gov't Ltr.") and in further support of our request that this case be submitted for random assignment from the criminal wheel. In its June 2 response, the government fails to directly address the concerns raised in our letter, and does not deny that it considered the judge assigned in deciding how to proceed in this case or the other cases we identified. In fact, the arguments the government does proffer as purported explanations for its conduct only further demonstrate why this case should be submitted to the criminal wheel for reassignment.

    1.    <u>The Government's Has Not Offered Any Coherent Rationale for Circumventing the Random Assignment Process in This Case</u>

        The government devotes two-plus pages of its letter to a discussion about the construction of Rules 13(b) and 6(e) of the Local Rules – effectively arguing that it has unlimited

June 5, 2017
Page 2

authority to control the judge-selection process in cases like this one by deciding whether to supersede the cooperator's information or file a new indictment after learning the judge assigned to the cooperator's case (Gov't Ltr. 2-4) – uses another page and a half to list examples of cases in which it did precisely that (*id.* at 4-5), and concludes with a single paragraph rebutting that it did not direct the case to a judge to obtain the benefit of a prior legal ruling, an argument not raised by the defense (*id.* at 5 & n.5). However, ***nowhere*** in the response does the government deny that, in making the decision whether to supersede or proceed by way of a separate indictment – in this or any other case – it considered the identity of the judge assigned to the original case. Instead, in an artfully worded paragraph, the government offers a non-exhaustive list of factors it claims it considers in making that determination. (*Id.* at 5). But the government does not explain how these factors led to the decision to supersede in this case, nor does it account for the inconsistent charging decisions highlighted in our letter. Indeed, a review of those charging decisions (based on the publicly available information) makes clear that the factors identified by the government do not cut in any one direction across cases and can easily be manipulated to justify virtually any charging decision. Far from serving as decisional rules, the government's factors are nothing more than makeweight arguments to distract the Court from the government's failure to deny that by choosing to supersede or proceed by way of separate indictment after a cooperator pleads guilty, the government is able to unilaterally decide whether to proceed before the judge assigned to the underlying cooperator's case or a different judge.

    (a)  <u>The Extent of Factual Overlap</u>

    The government's claim that it is guided in the decision whether to supersede a cooperator's information or proceed by way of separate indictment based on "the extent of the factual overlap" does not withstand scrutiny. (*Id.* at 5). As an initial matter, the government is only able to consider superseding if there is indeed substantial factual overlap since under Rule 8(b) of the Federal Rules of Criminal Procedure, two defendants may be charged together only "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions . . . ." In addition, it would be the rare situation where a cooperator's case does not factually overlap with that of the indicted defendants against whom he or she is cooperating. As a result, it's not surprising that several of the cases cited in our letter rebut the government's suggestion that it supersedes in cases such as this one, where there is considerable overlap between the conduct for which the cooperator pleaded guilty and the conduct charged against the later added defendants:

- In *United States v. Hallac*, 15-cr-512 (RMB), Albert Hallac pled guilty to an information charging him and certain unnamed co-conspirators with conspiracy to defraud investors in the his hedge fund, Weston Capital Asset Management, based on their failure to disclose certain transactions to investors and converting investors' funds for their own benefit. In *United States v. Bergstein*, 16-cr-746 (PKC), the government separately indicted Keith Wellner, the fund's General Counsel and Chief Operating Officer, and David Bergstein, one of the fund's investors, for their participation in the same scheme.

June 5, 2017
Page 3

- In *United States v. McAlister*, 16-cr-653 (AKH), Lisa McAlister, the Chief Accounting Officer of a real estate investment trust ("REIT"), pleaded guilty to an information charging her with accounting fraud based on the inclusion of inflated performance metrics in certain of the firm's SEC disclosures. The government separately charged Brian Block, the REIT's Chief Financial Officer and McAlister's boss, for his role in the fraud in *United States v. Block*, No. 16-cr-595 (JPO).

- In *United States v. Condron*, 12-cr-768 (NRB), Henry Condron, a trader on a cash equity desk, pled guilty to an information charging him and four unnamed co-conspirators with participating in a conspiracy to sell securities at inflated prices in order to boost profits and charge excessive commissions. In *United States v. Leszczynski*, 12-cr-923 Crim. 923 (JFK), Marek Leszczynski and Benjamin Chouchane, two sales brokers on the same desk, were separately indicted for their participation in the scheme.

    (b)    <u>Whether There Are Multiple Cooperators and Multiple Pending Cases Before Different Judges</u>

The government's claim that it considers "whether there are already a number of different cases pending before different judges (*e.g.*, if there are already multiple cooperators with cases pending before different judges) or just one case where superseding might make more sense" in deciding how to charge a case likewise fails to explain the government's conduct and only serves to highlight the government's unilateral power to abuse the process. While the government seems to suggest that it proceeded by way of superseding indictment in this case because there is only a single cooperator with a single open case, it appears the same was true of many of the cases cited on pages 8 and 9 of our letter in which the government proceeded by way of separate indictment instead. *Kang*, 16-cr-837 (JPO); *Percoco,* 16-cr-776 *(VEC)*; *Bergstein*, 16-cr-746 (PKC); *Block*, 16-cr-595 (JPO); *Leszczynski*, 12-cr-923 (JFK). Moreover, there is more than one cooperating witness and open case relating to the Indicted Defendants – a fact the government studiously avoids addressing in its response. As we pointed out in our letter at page 2, there are allegations against Mr. Blaszczak related to alleged insider trading committed by Christopher Plaford, who currently has a case pending before Judge Abrams, *United States v. Plaford*, 16-cr-400 (RA), and who is expected to be a witness at trial in this case.

    (c)    <u>The Timing of Charges and Any Decisions to Cooperate</u>

Although the government claims the "timing of the charges and any decision to cooperate" influences the decision whether to supersede or proceed by separate indictment (Gov't Ltr. at 5), it does not explain how this factor purportedly impacts that analysis, and the only relevance would seem to be whether the cooperator's plea preceded the indictment which was the situation in all the cases cited in our letter. Moreover, those same cases demonstrate that the government has filed separate indictments in cases like this one, where the cooperating witnesses pleaded guilty just days or weeks before the new defendants were charged, rather than

June 5, 2017
Page 4

proceeding by superseding indictment as it did in this case. *See, e.g.*, *Schonhorn*, 16-cr-828 (PGG), and *Kang*, 16-cr-837 (JPO) (cooperator pled guilty on December 15, 2016 and separate indictment against defendants unsealed on December 19, 2016); *United States v. Barnetson*, 12-cr-157 (KMW), and *United States v. Kinnucan*, 12-cr-163 (DAB) (cooperator pled guilty on February 17, 2012 and government filed separate indictment against defendants on February 21, 2012). The government has also pursued separate indictments in cases in which the cooperator's guilty plea long preceded the charges against the new defendants. *See Hallac*, 15-cr-512 (RMB), and *Bergstein*, 16-cr-746 (PKC) (cooperating witness pled guilty on January 14, 2016 and defendants were charged in separate indictment on November 9, 2016); *McAlister*, 16-cr-653 (AKH), and *Block*, 16-cr-595 (JPO) (cooperator pleaded guilty on June 29, 2016 and defendant charged in separate indictment on September 7, 2016). Quite clearly, the timing of the charges does not dictate how the government elects to proceed and cannot justify the government's decision to supersede and avoid the random assignment of this case.

        (d)      <u>The Likelihood That A Cooperator With a Pending Case Will Be Called to Testify.</u>

The government's suggestion that "the likelihood that a cooperator with a case already pending will be called to testify" is a relevant factor in deciding whether to indict or supersede into an existing case shows just how far the government is reaching in an effort to justify its conduct. We dare say that in virtually every case there is some expectation that a cooperating witness will be called to testify at any trial of the later charged defendants. That is precisely why the government signs up cooperators, and the cooperator commits in the standard cooperation agreement to agree to testify at any future trial. The claim that the likelihood of a cooperator's testimony somehow explains the government's inconsistent charging decisions – and the decision to supersede in this case in particular – simply is not credible and fails to account for the well-settled practice in this District of transferring a cooperator's case for sentencing to the judge assigned to the case in which the cooperator testified.

        (e)      <u>Judicial Efficiencies in Light of the Likelihood of Trial and the Complexity of Issues</u>

Finally, the government's conclusory contention that in some cases "judicial efficiency weighs in favor of superseding" because of "the likelihood of trial and complexity of issues" (Gov't Ltr. at 5), has no application in cases like this one, where the only role the judge has played in the existing case is taking (or in this case, accepting) the cooperator's guilty plea. In these instances, the judge assigned to the cooperator's case has not been exposed to a "complexity of issues" that might somehow warrant the circumvention of the random assignment process to keep the later filed case before the same judge for trial. Whether or not judicial efficiency could ever be an appropriate basis for circumventing the criminal wheel,[1] it plainly

---

[1] *See, e.g.*, *United States v. Phillips*, 59 F. Supp. 2d 1178, 1184 (D. Utah. 1999) (noting that a judge's prior "familiarity" with a matter could not support reassignment to that judge in light of each judge's "'duty to render objective decisions upon a proper record and to disregard earlier

June 5, 2017
Page 5

provides no justification for the government's conduct here.

    2.    <u>The Superseding Indictment is a Violation of the Letter and the Spirit of the Local Rules That Can and Should be Remedied by the Court</u>

Lacking any coherent explanation for proceeding by way of superseding indictment against the Indicted Defendants, the government simply contends that under its construction of Rule 6(e), it has unlimited authority to circumvent the random assignment system and this District's rejection of a related case doctrine for criminal cases whenever the government alone deems it advantageous, simply by styling a new indictment as "superseding."[2] (Gov't Ltr. 2-4). In support of this argument, the government notes that this practice has twice been reviewed (and, in the government's view, sanctioned) by the Assignment Committee for the Southern District of New York – first in *United States v. Bailey*, S2 97 Cr. 269 (DLC), 1998 WL 748308 (S.D.N.Y. Oct. 20, 1998), and again in *United States v. Steinberg*, 12 Cr. 121 (RJS) (*see* Gov't Ltr. 4-5). The government's reliance on these cases is surprising given that the Second Circuit has since condemned the government's conduct in *Steinberg* as inappropriate judge-shopping, *see* May 30, 2016 Letter of Huber and Olan at 4-5, and the *Bailey* case is easily distinguishable.[3]

We respectfully submit that the government's actions in this case violate the letter and spirit of the District's rules. Regardless, while the government suggests that the court should not take any action in the absence of an amendment to Rule 6(e) to address a practice that is, for the reasons we spelled out in our May 30 letter, unconstitutional and fundamentally unfair to the Indicted Defendants (*see* Gov't Ltr. at 4), there is no question that courts should not operate

---

judicial contacts with a case or party'") (quoting *Liteky v. United States*, 510 U.S. 540, 561-62 (1994) (Kennedy, Blackmun, Stevens, and Souter, JJ., concurring)).

[2] Even in jurisdictions that allow the relation of criminal cases, it is the court, not the local U.S. Attorney's Office, that ultimately determines whether a case may proceed as related. *See, e.g.*, R. 50.3.2, Guidelines for the Div. of Bus. Among Dist. Judges, E.D.N.Y. (providing that all criminal cases shall be randomly assigned upon filing and that the U.S. Attorney's Office must then give notice of whether it "seeks reassignment").

[3] In *Bailey*, the government indicted Deric Frank in March 1997 on a number of charges, including murder, in the first death-eligible case in this District for years. This Court presided over it for more than a year, devoting substantial time and attention to numerous pre-trial motions and evidentiary hearings. On the eve of trial, Frank pleaded guilty to a superseding information and agreed to cooperate against Jesse Bailey, with whom he had committed the charged crimes, in exchange for the government taking the death penalty off the table, and Bailey was superseded into the existing case. Given the judge's familiarity with the "complexity" of the issues involved, it may well be that the Assignment Committee determined that the superseding indictment was warranted based on considerations of judicial efficiency. But that rationale cannot justify the government's conduct here as there have been no substantive proceedings (other than this application) before this Court.

June 5, 2017
Page 6

under a cloud or appearance of impropriety at any time. *See Wheat v. United* States, 486 U.S. 153, 160 (1988) ("Federal courts have an independent interest in ensuring that . . . legal proceedings appear fair to all who observe them."); *United States v. Montecalvo*, 533 F.2d 1110, 1112 (9th Cir.) ("The appearance of fairness is as important as fairness-in-fact in maintaining confidence in the administration of justice in the minds of the public and of the accused."), *vacated on other grounds*, 545 F.2d 684 (9th Cir. 1976). As Judge Castel observed in *United States v. Hoey*, the court has "powerful tools . . . to protect a defendant from an abuse of government power," including "the authority of a judge to order random reassignment when justice so dictates." S3 11 Cr. 337 (PKC), 2014 WL 1091173, at *3 (S.D.N.Y. Mar. 12, 2014). The court should exercise that authority here and send this case to the criminal wheel for random assignment.

\* \* \* \* \* \*

For all these reasons, we respectfully request that this case be assigned in accordance with the District's procedures set forth in Rule 6(b).

Thank you for your consideration.

                                                                                          Respectfully submitted,

                                                 /s/ Barry H. Berke
                                              Barry H. Berke
                                              Dani R. James
                                              Kramer Levin Naftalis & Frankel LLP
                                              *Attorneys for Theodore Huber*

                                               /s/ David Esseks
                                              David Esseks
                                              Eugene Ingoglia
                                              Allen & Overy LLP
                                              *Attorneys for Robert Olan*

cc:    Ian McGinley, Josh Naftalis and Damian Williams
        Assistant United States Attorneys
        (by email)